AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

**FILED**

Mar 14 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ VeronicaCota    DEPUTY

| In the Matter of the Search of | )   |
| *(Briefly describe the property to be searched or identify the person by name and address)* | )   Case No.   24MJ8222 |
| | )   |
| White Apple iPhone | )   |
| Model: Unknown | )   |
| With no identifying numbers or features | )   |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-3, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Abel Rodriguez incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent Abel Rodriguez
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date:   03/13/2024

*Judge's signature*

City and state:  El Centro, California

HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3**:          White Apple iPhone
                  Model: Unknown
                  With no identifying numbers or features
                  Seized from Daniel Alejandro HERNANDEZ-Martinez
                  **(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of November 18, 2023, up to and including December 2, 2023, and is limited to the following:

a.  tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.  tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.  tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.  tending to identify the user of, or persons with control over or access to, the Target Device;

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

1  **<u>AFFIDAVIT</u>**

2      I, Abel Rodriguez, United States Border Patrol Agent, having been duly sworn,

3  depose and state as follows:

4  **INTRODUCTION**

5      1.    I submit this affidavit in support of an application for warrant(s) to search

6  the following electronic device(s):

7    **<u>A-1</u>:**        Gray Hisense Cellphone

8                   Model: Unknown

9                   With no identifying numbers or features
                 Seized from Jose Angel ZENDEJAS

10                   **(Target Device #1)**

11  **<u>A-2</u>:**        Pink Samsung Cellphone

12                   Model: Unknown

13                   With no identifying numbers or features
                 Seized from Jose Angel ZENDEJAS

14                   **(Target Device #2)**

15  **<u>A-3</u>:**        White Apple iPhone

16                   Model: Unknown

17                   With no identifying numbers or features
                 Seized from Daniel Alejandro HERNANDEZ-Martinez

18                   **(Target Device #3)**

19  **<u>A-4</u>:**        Black /White Motorola Cellphone

20                   Model: Unknown

21                   With no identifying numbers or features
                 Seized from Daniel Alejandro HERNANDEZ-Martinez

22                   **(Target Device #4)**

23  as further described in Attachments A-1 to A-4, and to seize evidence of a crime,

24  specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as

25  further described in Attachment B.

26      2.    The requested warrant relates to the investigation and prosecution of Jose

27  Angel ZENDEJAS (ZENDEJAs) for transportation of illegal alien Daniel Alejandro

28  HERNANDEZ-Martinez (HERNANDEZ) (the "Material Witness") in violation of Title 8

U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from ZENDEJAS and the Material Witness on or about December 1, 2023, incident to the arrest of ZENDEJAS and the Material Witness. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.    Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents.  Dates and times are approximate.

## EXPERIENCE AND TRAINING

4.    I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since September 15, 2008, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 23-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5.    I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of

undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.    Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.    The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to

make smuggling arrangements, receive instructions, and report their locations after crossing.

8.  Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9.  This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.  tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.  tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.  tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### FACTS SUPPORTING PROBABLE CAUSE

10.     On November 30, 2023, Border Patrol Agents - Intelligence assigned to the El Centro Sector Intelligence Anti-Smuggling Unit Group#2 (ASU) were conducting surveillance in Calexico, California. The ASU wears plain clothes and drives unmarked Service vehicles in order to blend in with the general public. ASU conducts surveillance and investigations on known smugglers and smuggling transportation cells operating in the Imperial Valley.

11.     On December 1, 2023, at approximately 9: 11 p.m., ASU Agents were conducting mobile surveillance on a white Oldsmobile Alero (Alero) that was being driven by Jose Angel ZENDEJAS (ZENDEJAS) a United States Citizen. BPA-I L. Heipt identified this Alero as a vehicle that was involved in alien smuggling on November 26, 2023, after it was crossed into the United States from Mexico by ZENDEJAS. ZENDEJAS is a well-known and documented alien smuggler operating in the El Centro Border Patrol Sectors Area of responsibility. ASU Agents agent have previously conducted surveillance on ZENDEJAS and the Alero after it was parked facing north next to the bus stop, approximately twenty yards north of the IBF on Heffernan Drive, with the trunk left cracked open. This area is known by Border Patrol Agents as "Old Port". ASU Agents know from experience that alien smugglers will often leave a vehicle in the area with the trunk open so it would be readily available for illegal aliens to conceal themselves inside after an illegal entry is made near Old Port.

12.     While conducting surveillance on ZENDEJAS and the Alero on this prior occasion, ASU Agents observed ZENDEJAS continuously walking up and down the surrounding streets while on his cell phone watching the Alero and the uniformed Border Patrol Agent who was positioned at Old Port. After approximately two hours, ZENDEJAS returned to the Alero and left the area. It should be noted that ZENDEJAS has been arrested and encountered by Border Patrol Agents on multiple alien smuggling occasions.

5

1  ZENDEJAS is currently on supervised release for Alien Smuggling and Assaulting a
2  Federal Agent.

3         13.    On November 30, 2023, at approximately 10:33 p.m., while ASU Agents were
4  conducting mobile surveillance on ZENDEJAS in the Alero, Calexico Border Patrol
5  Agents who were observing the Remote Video Surveillance System (841), observed four
6  individuals on top of the United States/Mexico International Boundary Fence in between
7  Andrade Avenue and Dool Avenue on 1st Street. 841 relayed this observation to Calexico
8  Border Patrol Agents who were positioned on 1st Street. While responding, Calexico
9  Border Patrol Agents watched as the individuals climbed down the United States/Mexico
10 International Boundary Fence and began running northbound across 1st Street. Two of the
11 individuals ran northbound on Dool Avenue, while two individuals ran north into an area
12 known to Calexico Border Patrol Agents as "Parts Place".

13        14.    This area is persistently used by alien smugglers to cross their illicit human
14 cargo due to the proximity of the residential houses. This area is beneficial to alien
15 smugglers because when illegal aliens illegally enter the United States in this area, they are
16 able to abscond from Border Patrol Agents and conceal themselves within the residential
17 the properties, structures, and alleyways of the surrounding neighborhood. During a
18 smuggling scheme, after successfully illegally crossing into the United States, the illegal
19 aliens are often guided via cell phone by alien smugglers in Mexico and in the United
20 States.

21        15.    It is very common for alien smugglers in the area to telephonically guide
22 illegal aliens from the IBF to a location where an alien smuggler who is tasked with the job
23 of picking them up will travel to the area, pick up the illegal aliens and drive them to a safe
24 house or motel where they wait to be transported further into the United States. It is also
25 very common for individuals in this area to act as foot guides and lead the illegal aliens to
26 the location where they are picked up. It is also very common for alien smugglers to send
27 multiple aliens over the fence at the same time in an attempt to overwhelm Border Patrol
28 Agents and increase the chances of one or more alien's eluding capture.

16.    As the four individuals absconded from Border Patrol Agents across 1st Street, Border Patrol Agent-Intelligence (BPA-I) M. Clinton, who was positioned north of the area at the intersection on 2nd Street and Beach Avenue, observed an individual, later identified as Daniel Alejandro HERNANDEZ-Martinez (HERNANDEZ) sprint across 2nd Street and conceal himself between two vehicles in a carport. BPA-I M. Clinton broadcasted his observation to additional ASU Agents who were in the area conducting mobile surveillance on ZENDEJAS and the Alero, which was now in the process of parking on Beach Avenue, south of 4th Street. At this time, ASU Agents firmly believed that HERNANDEZ was an illegal alien who absconded from Border Patrol Agents and that ZENDEJAS was parked north of the area with the intention of picking up HERNANDEZ once Border Patrol Agents stopped searching and cleared from the area. After approximately fifteen minutes, all uniformed Border Patrol Agents returned to 1st Street and resumed their normal operations. ASU Agents remained strategically parked in the area in order to keep constant visual on ZENDEJAS as well as all surrounding streets in anticipation that HERNANDEZ would make his way to ZENDEJAS, or ZENDEJAS would make his way to HERNANDEZ.

17.    At this time, BPA-I M. Clinton travelled on foot to the carport that he had observed HERNANDEZ hide in and observed that HERNANDEZ was no longer there but noticed that the gate north of the carport was left opened as if HERNANDEZ had absconded further north towards the alley at the edge of the property that runs east/west just north of the carport. As BPA-I M. Clinton returned to his vehicle, BPA-I S. Ley observed ZENDEJAS exit the Alero and begin walking southbound on Beach Avenue towards 2nd Street. As ZENDEJAS made his way south, ASU Agents were able to maintain visual on him.

18.    Once at 3rd Street, BPA-I L. Heipt observed ZENDJAS walk westbound, while on his cell phone, then turn around and walk back towards Beach Avenue, in a manner as if he was receiving instructions on where to walk and confirm if he was in the right area. As ZENDEJAS reached Beach Avenue, he began walking southbound to 2nd Street, near the carport. At this time, BPA-I M. Clinton was still positioned in the area.

While ZENDEJAS paced around the area of the carport, BPA-I M. Clinton could hear him yelling out "Daniel" multiple times. ZENDEJAS was also on his cell phone while doing this.

19.     After yelling "Daniel" multiple times, ASU Agents watched as ZENDEJAS walked westbound in the alley between Beach Avenue and Andrade Avenue (north of the carport), back to Beach Avenue, eastbound on 3rd Street in the middle of the street, then to the northside of 3rd Street. As ZENDEJAS was crossing over to the northside of 3rd Street, BPA-I L. Heipt observed him wave his hand in a motion as if he was instructing someone to follow him. After waving his hand, BPA-I L. Heipt observed HERNANDEZ cross 3rd Street and follow ZENDEJAS from a distance.

20.     As ZENDEJAS reached Andrade Avenue, he began walking northbound through the property of abandoned buildings towards the alley that runs east/west between 3rd Street and 4th Street. BPA-1 L. Heipt watched as HERNANDEZ followed. At this time, BPA-1 A. Garcia and BPA-1 M. Clinton were able to position themselves near Andrade Avenue in order to keep constant visual on the alley. BPA-1 L. Heipt then watched as ZENDEJAS returned to 3rd Street, without HERNANDEZ and began walking northbound on Andrade Avenue. While ZENDEJAS walked northbound, BPA-1 M.Clinton and BPA-1 A. Garcia observed him begin walking westbound in the alley towards Beach A venue.

21.     As ZENDEJAS continued walking westbound in the alley towards Beach Avenue, where the Alero was parked, BPA-1 M. Clinton and BPA-1 A. Garcia observed HERNANDEZ attempting to conceal himself. As ZENDEJAS returned to the Alero, BPA-I S. Ley observed him enter the Alero and begin travelling southbound on Beach Avenue.

22.     ASU Agents remained strategically parked in the area and continued to maintain a perimeter in order to observe the Alero as it circled the residential streets and keep constant visual on HERNANDEZ as he began walking westbound in the alley towards Beach Avenue. ASU Agents watched as HERNANDEZ crossed Beach Avenue and continued walking westbound in the alley towards Dool Avenue. As HERNANDEZ

continued walking in the alley towards Dool Avenue, ASU Agents observed ZENDEJAS park the Alero on 4th Street, just east of Dool Avenue.

23.     While ZENDEJAS remained parked, BPA-I L. Heipt travelled northbound on Dool Avenue from 3rd Street. As BPA-I L. Heipt passed the alley, he observed HERNANDEZ quickly jump and hide behind a dumpster that was on the corner of Dool and the alley between 3rd and 4th Street. ASU Agent again positioned their unmarked service vehicles in and around the area and watched as the Alero travelled eastbound on 4th Street and began circling the residential street. While the Alero continued to drive in circles, BPA-I A. Garcia travelled through the alley and again observed HERNANDEZ near the dumpster.

24.     After approximately five minutes, ASU Agents watched as the Alero entered the alley from Beach Avenue, travelled westbound and parked next to the dumpster. ASU Agents then observed ZENDEJAS exit the Alero and converse with HERNANDEZ. ZENDEJAS walked to Dool Avenue and began looking up and down Dool Avenue. Upon returning to the Alero and entering it, ASU Agents observed HERNANDEZ walk out of the alley, across Dool Avenue. ASU Agents kept constant visual on HERNANDEZ as he walked northbound on Dool Avenue then westbound on 4th Street. As HERNANDEZ continued walking westbound on 4th Street, ASU Agents observed the Alero exit the alley, travel north on Dool Avenue the west on 4th Street. ASU Agents did not see the Alero stop however did momentarily lose visual on HERNANDEZ. HERNANDEZ was observed again by ASU Agents before reaching Encinas Avenue, which is the street to the west of Dool. As HERNANDEZ continued walking westbound on 4th Street, ASU Agents positioned their unmarked service vehicles along 4th Street and the neighboring streets in order to keep constant visual on HERNANDEZ. ASU Agents continued to rotate their unmarked service vehicles and keep constant visual on HERNANDEZ as he continued walking westbound on 4th Street towards Imperial Avenue.

25.     As ASU Agents approached Rockwood Avenue and 4th Street, they observed ZENDEJAS standing on the sidewalk. ASU Agents then observed the Alero parked on

1  Rockwood A venue north of 4th Street. ASU Agents continued to keep constant visual on
2  HERNANDEZ as he walked towards the intersection of Rockwood Avenue and 4th Street.
3  As HERNANDEZ approached ZENDEJAS's location, ZENDEJAS walked northbound on
4  Rockwood Avenue, entered the Alero and travelled southbound towards 2nd Street.

5       26.    ASU Agents continued to monitor HERNANDEZ as he continued walking
6  westbound on 4th Street past Paulin Avenue. Upon reaching Imperial Avenue, BPA-I H.
7  Torres, who was positioned in the Pep Boys parking lot, located at 400 Imperial Avenue,
8  Calexico, California watched as HERNANDEZ walked northbound in the parking lot
9  towards his unmarked service vehicle. At this time, Calexico Police Officers were
10 travelling westbound on 4th Street with their emergency lights and sirens activated. This
11 caused HERANNDEZ to run to the van that was parked next to BPA-I H. Torres and hide
12 under it. BPA-I H. Torres was able to keep constant visual on HERNANDEZ as he
13 continued to hide under and behind the van. While HERNANDEZ continued to conceal
14 himself, ASU Agents observed the Alero continue to travel in circles around Pep Boys
15 from 4th Street to Imperial Avenue, to 5th Street and back to 4th Street multiple times
16 before parking on Paulin A venue in between 4th and 5th Street.

17      27.    After parking, BPA-I L. Heipt observed ZENDEJAS exit the Alero and walk
18 southbound on Paulin Avenue. BPA-I H. Torres also observed HERNANDEZ stand up
19 from the van and walk southbound back towards 4th Street then in the alley towards 3rd
20 Street. As both HERNANDEZ and ZENDEJAS travelled towards 3rd Street, ASU Agents
21 momentarily lost visual on both subjects. After approximately five minutes, BPA-10 I A.
22 Garcia observed ZENDEJAS sitting inside of Donut Avenue, located at 101 3rd Street while
23 HERNANDEZ sat across the street on the southside of 3rd Street at the bus stop in front
24 of the Donut A venue parking lot. HERNANDEZ was easily recognizable as he had a
25 Ferrari jacket on.

26      28.    ASU Agents repositioned themselves and kept constant visual on
27 ZENDEJAS, HERNANDEZ and the Alero. After approximately ten minutes, ASU Agents
28 watched as ZENDEJAS exited Donut Avenue, walked to the Alero, entered the Alero,

travelled to the Donut A venue parking lot, parked the Alero in the parking lot, walked to HERNANDEZ and sat next to him at the bus stop. After ZENDEJAS and HERNANDEZ were seen conversing with one another, ASU Agents watched as HERNANDEZ stood up, walked to the Alero, and entered the Alero. While HERNANDEZ remained seated in the front passenger seat of the Alero, ZENDEJAS remained seated at the bus stop smoking a cigarette.

29.     After approximately five minutes, ZENDEJAS stood up, walked to the Alero, entered the driver's seat, and began to travel towards the exit of the Donut Avenue parking lot. As the Alero approached the exit of the parking lot, ASU Agents activated the emergency lights and sirens of their unmarked service vehicles, entered the parking lot and conducted a vehicle stop on the Alero in order to conduct an immigration inspection on HERNANDEZ.

30.     BPA-1 S. Ley approached the Alero with Border Patrol markings and insignia fully visible, identified himself as a Border Patrol Agent to ZENDEJAS and ordered him out of the Alero. As ZENDEJAS exited the Alero and BPA-1 S. Ley began to question him as to his involvement in alien smuggling, ZENDEJAS turned around and quickly absconded from the vehicle stop. BPA-1 S. Ley and Calexico Border Patrol Agents on bike patrol gave chase and subdued and secured ZENDEJAS near 1st Street after a foot pursuit lasting approximately 2.5 blocks. While ZENDEJAS was being secured, BPA-1 L. Heipt identified himself as a Border Patrol Agent to HERNANDEZ and questioned him as to his citizenship. HERNANDEZ admitted to being a citizen of Mexico being illegally present in the United States. HERNANDEZ admitted that he made the illegal entry by climbing the border fence in an area other than through a designated Port of Entry. HERNANDEZ was not a give-up and attempted to evade capture and elude inspection. HERNANDEZ was subsequently arrested for Entry Without Inspection.

31.     Both individuals were transported to the Calexico Border Patrol Station for further processing. Material witness Daniel Alejandro HERNANDEZ-Martinez stated he is a citizen of Mexico. HERNANDEZ stated he does not have any legal documents

allowing him to live, work or remain in the United States legally. HERNANDEZ stated he was going to pay $10,000 USD to be smuggled to Los Angeles, California.

32.     During a search incident to arrest of ZENDEJAS and the Material Witness, four cellphones were found. BPA-I S. Ley found one gray Hisense Cellphone (Target Device #1) and a pink Samsung (Target Device #2) on ZENDEJA's person. ZENDEJAS claimed ownership of these cellphones and they were seized as evidence. BPA-I L. Heipt located a white Apple iPhone (Target Device #3) and a black/white Motorola Cellphone (Target Device #4) on HERNANDEZ's person. HERNANDEZ claimed ownership of these two cellphones, and they were seized as evidence.

33.     I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement.  In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event.  Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts.  Given this, I respectfully request permission to search the Target Devices for data beginning on November 18, 2023, up to and including December 2, 2023, the day after the arrest of ZENDEJAS and the Material Witness.

**METHODOLOGY**

34.     It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the

network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

35.    Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

36.    Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

**CONCLUSION**

37.     Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that ZENDEJAS and the Material Witness used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by ZENDEJAS, the Material Witness, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Abel Rodriguez Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 13th day of March 2024.

3:08 p.m.

HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

14

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**        Gray Hisense Cellphone
               Model: Unknown
               With no identifying numbers or features
               Seized from Jose Angel ZENDEJAS
               **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
## PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**          Pink Samsung Cellphone
Model: Unknown
With no identifying numbers or features
Seized from Jose Angel ZENDEJAS
**(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3**:          White Apple iPhone
                    Model: Unknown
                    With no identifying numbers or features
                    Seized from Daniel Alejandro HERNANDEZ-Martinez
                    **(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**                  Black /White Motorola Cellphone
Model: Unknown
With no identifying numbers or features
Seized from Daniel Alejandro HERNANDEZ-Martinez
**(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of November 18, 2023, up to and including December 2, 2023, and is limited to the following:

a.  tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.  tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.  tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.  tending to identify the user of, or persons with control over or access to, the Target Device;

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.